Cite as 2019 Ark. App. 345

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-18-610

| | |
|---|---|
| | **Opinion Delivered:** August 28, 2019 |
| ALLAN CURTIS JONES | |
| | APPEAL FROM THE MISSISSIPPI |
| APPELLANT | COUNTY CIRCUIT COURT, |
| | CHICKASAWBA DISTRICT |
| V. | [NO. 47BCR-16-357] |
| | |
| | HONORABLE CINDY THYER, |
| STATE OF ARKANSAS | JUDGE |
| | |
| APPELLEE | AFFIRMED |

**MEREDITH B. SWITZER, Judge**

Allan Curtis Jones was charged with the offense of murder in the first degree in the shooting death of Mike Wallace. A Mississippi County Circuit Court jury convicted Jones of murder in the second degree and sentenced him to eighteen years in prison. The jury also enhanced Jones's sentence by six years, to be served consecutively to his sentence for murder in the second degree, for using a firearm in the commission of the offense. On appeal, Jones argues the circuit court erred (1) in refusing his request for mistrial based on comments made by the prosecutors in closing arguments; (2) in denying his motion to deem Arkansas's firearm-enhancement statute unconstitutional as violative of the double-jeopardy clauses of both the United States and Arkansas Constitutions; and (3) in refusing to give the jury his proposed nonmodel jury instruction. We affirm.

## I. *Facts*

Jones does not appeal the sufficiency of the evidence to support his conviction for murder in the second degree; therefore, only a brief overview of the facts is necessary. Jones, a resident of Arbyrd, Missouri, worked for Lonnie Gibson and managed Gibson's farms, which were located in southeast Missouri and northeast Arkansas. Wallace farmed land adjacent to one of Gibson's farms north of Leachville, Arkansas, just a few miles from the Missouri border. On the afternoon of October 27, 2016, Wallace obtained Jones's cell-phone number from a friend and then called Jones, telling Jones he had heard Jones had been "talking shit" about him. When Jones denied saying anything about Wallace, Wallace told Jones to meet him at "Lonnie Dale's 40," (Gibson's farm north of Leachville) or Wallace would find Jones and "get him." Jones called Gibson, who told Jones that Wallace likely carried a gun and advised him not to meet Wallace. Jones elected to meet Wallace, and he called his cousin, Anthony Vowels, to ride with him "to keep the peace." Wallace continued to text Jones, asking him if he was coming. When Jones pulled up to the appointed location and got out of his truck, Wallace ran toward Jones with arms "flailing." When Wallace reached Jones, he grabbed Jones's collar. Jones backed down the side of his truck and then pulled his .32-caliber handgun from his pocket and shot Wallace until the gun was empty, a total of seven shots. Wallace died at the scene from his injuries. No gun was found on Wallace's person or in his truck.

## II. *Refusal to Grant Mistrial for Comments Made During Closing Arguments*

Jones first argues the circuit court erred in denying his motion for mistrial based on improper comments made by the prosecutors during closing arguments. A mistrial is an

extreme and drastic remedy reserved only for when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *Sampson v. State*, 2018 Ark. App. 160, 544 S.W.3d 580. The decision to grant a mistrial is within the sound discretion of the circuit court and will not be reversed absent a showing of abuse or manifest prejudice to the appellant. *Id.*

Jones contends that his objections to five instances of improper comments during closing arguments warranted a mistrial. These five instances were when the prosecutors (1) stated Jones could not claim justification in shooting Wallace when it was "combat by agreement"; (2) reminded the jury that during jury selection, some jurors agreed one could not claim self-defense by seriously injuring another person if that person did not have a weapon with which to seriously injure you; (3) told the jury that it did not "look good" that Jones came from Missouri to Arkansas to meet Wallace when he had no reason to be there; (4) cautioned the jury to be aware of "lawyering" in response to a line of questioning when defense counsel asked a witness whether he gave Wallace Jones's cell-phone number; and (5) illustrated extreme emotional distress that would constitute manslaughter by using the example of a man killing another man upon coming home from work and finding his wife in bed with that man.

Only one of the five instances that Jones claims merited a mistrial is preserved for appellate review—when the prosecutor told the jury that it did not "look good" that Jones came from Missouri to Arkansas to meet Wallace when he had no reason to be there. Jones objected to the other four instances, three of which the circuit court sustained and for which the circuit court gave cautionary instructions. Jones, however, never concurrently requested

a mistrial in those four instances. He received all the relief he requested in response to three of those objections; one of Jones's objections was overruled, yet he still did not request a mistrial.

The only instance in which he requested a mistrial was during the third objection. A motion for mistrial that is based on improper closing argument must be made when the objectionable statement is made; motions and objections are required to be made at the time the objectionable matter is brought to the jury's attention, or they are otherwise waived. *Killian v. State*, 96 Ark. App. 92, 100, 238 S.W.3d 629, 634 (2006). An appellant cannot complain of error in not granting a mistrial when a mistrial was not requested from the circuit court. *Nickelson v. State*, 2012 Ark. App. 363, 417 S.W.3d 214.

Regarding the third objection—the only one preserved for our review—not only did the circuit court deny Jones's motion for mistrial, it also denied his request for a cautionary instruction, asking Jones's counsel what he wanted to say that would not draw more attention to the statement. Whether an admonition was requested and given, or requested and refused, are relevant factors, although not necessarily definitive in reaching a conclusion as to whether a mistrial should have been granted. *Walker v. State*, 2019 Ark. App. 130, 571 S.W.3d 70. The circuit court is given broad discretion in controlling counsel in closing arguments, and the appellate courts will not interfere with that discretion absent a manifest abuse of that discretion. *Delatorre v. State*, 2015 Ark. App. 498, 471 S.W.3d 223. Closing remarks requiring reversal are rare and require an appeal to the jurors' passions; the circuit court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks. *Id.*

4

"Where an attorney's comment during closing arguments is directly reflecting or inferable from testimony at trial, there is no error." *Hendrix v. State*, 2011 Ark. 122, at 10 (quoting *Woodruff v. State*, 313 Ark. 585, 592, 856 S.W.2d 299, 303–04 (1993)). At trial, Jones testified he received a call from Wallace to meet him at Gibson's farm north of Leachville, Arkansas. Gibson counseled Jones not to go meet Wallace; nevertheless, Jones picked up his cousin, Vowels, and drove to Arkansas to meet Wallace. Jones did not give any other explanation as to why he was in Arkansas that afternoon. The prosecutor's comment was inferable from, if not a direct reflection of, Jones's testimony that the only reason he drove to Arkansas on the afternoon of October 27, 2016, was to meet Wallace at Wallace's request. Furthermore, while the circuit court denied Jones's request for a cautionary instruction, it had already instructed the jury that closing arguments were not evidence. *See Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). The circuit court did not abuse its discretion in denying Jones's request for a mistrial.

### III. *Firearm-Enhancement Statute – Violation of Double Jeopardy*

Jones next alleges the circuit court erred in denying his motion to dismiss that was based on a double-jeopardy violation. Jones argues he was impermissibly placed in jeopardy twice when his sentence for murder in the second degree was enhanced by six years pursuant to Arkansas Code Annotated section 16-90-120 (Repl. 2016)[1] for employing a firearm in

---

[1]Arkansas Code Annotated section 16-90-120(a) provides:

> Any person convicted of any offense that is classified by the laws of this state as a felony who employed any firearm of any character as a means of committing or escaping from the felony, in the discretion of the sentencing court, may be subjected

the commission of Wallace's murder. Jones contends he was sentenced to two prison terms for a single offense involving a death caused by a firearm. However, Jones's conviction for murder in the second degree did not require proof that he used a firearm to commit the offense. *See* Ark. Code Ann. § 5-10-103 (Repl. 2013).

When reviewing a denial of a motion to dismiss for violation of the Double Jeopardy Clause, typically a question of law, a de novo review should be conducted. *Muhammad v. State*, 67 Ark. App. 262, 998 S.W.2d 763 (1999). As the State correctly contends both article 2, section 8 of the Arkansas Constitution and Arkansas Code Annotated section 5-1-110 (Repl. 2013) are construed to afford the same protection as the Double Jeopardy Clause found in the Fifth Amendment to the United States Constitution. *Hughes v. State*, 347 Ark. 696, 66 S.W.3d 645 (2002). The United States Supreme Court has held that double-jeopardy protections are not applicable to sentencing proceedings in noncapital cases "because the determinations at issue do not place a defendant in jeopardy for an 'offense.'" *Monge v. California*, 524 U.S. 721, 728 (1998) (citations omitted).

This issue has already been decided by our appellate courts. In *Williams v. State*, 364 Ark. 203, 217 S.W.3d 817 (2005), our supreme court held that Arkansas Code Annotated section 16-90-120 (a) and (b) is only a sentence enhancement. In *Davis v. State*, 93 Ark. App. 443, 447, 220 S.W.3d 248, 250 (2005), this court held that "when section 16-90-120 is used to enhance a defendant's sentence, the double-jeopardy clause is not offended." *See also Campbell v. State*, 2017 Ark. App. 340, 525 S.W.3d 465; *Scott v. State*, 2011 Ark. App.

to an additional period of confinement in the Department of Correction for a period not to exceed fifteen (15) years.

6

296. Although Jones urges this court to overturn this line of cases, he provides no persuasive authority for doing so. Accordingly, we do not, and we affirm on this point.

IV. *Refusal to Give Nonmodel Jury Instruction*

Jones's third argument on appeal is that the circuit court erred in refusing to give the jury his proposed nonmodel jury instruction concerning his Second Amendment rights. His proposed jury instruction stated:

> The defendant is not on trial for possessing a firearm. You should draw no negative inference from the fact that Allan Curtis Jones exercised his right to bear a firearm as guaranteed by the Second Amendment to the Constitution of the United States of America.

Jones argues the legality and right to carry a weapon for any reason or no reason was an issue the State placed before the jury in an attempt to persuade the jury that carrying a weapon, in and of itself, was outside the realm of all possible reasonableness. We affirm on this point.

This court will not reverse a decision to give or reject a jury instruction unless the circuit court abused its discretion. *Rowland v. State*, 2017 Ark. App. 415, 528 S.W.3d 283. Generally, a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Graham v. State*, 2012 Ark. App. 90, 389 S.W.3d 33. Nonmodel jury instructions should be given only when the circuit court finds that the model instructions do not accurately state the law or do not contain a necessary instruction. *Griffin v. State*, 2015 Ark. App. 63, 454 S.W.3d 262. Just because a proffered jury instruction may be a correct statement of the law does not mean that a circuit court must give the proffered instruction to the jury. *Pokatilov v. State*, 2017 Ark. 264, 526 S.W.3d 849; *Sipe v. State*, 2012 Ark. App. 261, 404 S.W.3d 164.

7

Our law is well settled that there is no error in the refusal to give an instruction when there is no evidence to support the giving of that instruction. *Webb v. State*, 326 Ark. 878, 935 S.W.2d 250 (1996).

Jones argues there was evidence in the record that made possessing a firearm relevant. Specifically, he contends the prosecutors did all they could to convince the jury that he was "a gun-toting, out-of-stater, looking to shoot someone because he carried a handgun everywhere he went," and therefore, there was evidence to support the giving of his proffered instruction.

Jones is correct that there is no model jury instruction on the right to possess a firearm. But, as the State points out, whether Jones could legally possess a firearm was not an issue for the jury to decide. The issue the jury was asked to decide, after it determined Jones was guilty of murder in the second degree, was whether Jones employed a firearm in causing the death of Wallace. As to this issue, there is a model instruction on point and the jury was so instructed. There was no basis in the evidence for giving the jury instruction proffered by Jones, and the circuit court did not abuse its discretion in refusing to do so.

Affirmed.

GRUBER, C.J., and WHITEAKER, J., agree.

*Law Office of Wendell L. Hoskins II*, by: *Wendell L. Hoskins II*; and *Law Office of James W. Harris*, by: *James W. Harris* and *Zachary W. Morrison*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.